**Adil ZULBEARI, Petitioner,**

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.**

**No. 90–3299.**

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 6, 1991.

Decided May 12, 1992.

James Canfield, Rockford, Ill. (argued), for Adil Zulbeari.

Alison R. Drucker, Lori L. Scialabba, Charles E. Pazar, Robert Kendall, Jr., Philemina Jones (argued), Dept. of Justice, Office of Immigration Litigation, Richard L. Thornburg, U.S. Atty. Gen., Washington, D.C., A.D. Moyer, I.N.S., Chicago, Ill., for I.N.S.

Before CUDAHY and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUDAHY, Circuit Judge.

Petitioner Adil Zulbeari, appeals from a decision of the Board of· Immigration Appeals (the BIA) denying his application for asylum and ordering his deportation. Zulbeari, an ethnic Albanian Muslim, who is a citizen of Yugoslavia, entered the country near El Paso, Texas as an alien and without inspection by an immigration officer. The Immigration and Naturalization Service (the INS) charged him with deportability. Zulbeari conceded that he is deportable, but at his deportation hearing, he requested asylum. The Immigration Judge denied his request, holding that Zulbeari did not establish that he has a well-founded fear of persecution if he returns to Yugoslavia. The Immigration Judge gave Zulbeari 30 days to voluntarily depart or be deported to Yugoslavia. The BIA dismissed his appeal. We affirm.

## BACKGROUND

The critical facts in this case surround the arrest and imprisonment of three of Zulbeari's close friends for participating in a pro-Albanian demonstration in January 1986 and for possessing books relating to Albania and an Albanian flag. Zulbeari testified that he fears persecution because he worked closely with these men and spoke out against the government in conversations with them.

According to Zulbeari's testimony, government authorities questioned him twice about his relationship with the three friends and about whether he possessed any Albanian books. The first interrogation took place in November 1985, and he was questioned for three hours. In January 1986, his home was searched while his family was home and while he was away at work. The authorities did not interrogate his family at this time. The second interrogation took place in February 1986 before the arrests of his three friends and lasted an entire day. Zulbeari testified that the authorities slapped him during this interrogation. Twenty days later, after procuring a passport extension through a bribe, Zulbeari left Yugoslavia for Mexico.

Zulbeari testified that he was not a member of any political organization[1] and did not participate in the January 1986 demonstrations for which his friends were arrested. The police did not find any Albanian books when they searched his home in January. He was not interrogated by the police at any time after his friends were arrested. Other than engaging in general discussions with friends about the injustices inflicted on the Albanians by the Yugoslav government, his only political activity was helping to organize a demonstration in Kosovo in 1981 concerning education.

He stated that he did not attend the demonstration.

Zulbeari testified that government officials visited his home after he left and inquired as to his whereabouts. His wife told them that he had left the country. Zulbeari presented no other witnesses or affidavits in support of his petition.

## LEGAL ANALYSIS

I. Asylum

■ We must uphold a BIA decision if it is supported by "substantial evidence." *Balazoski v. INS*, 932 F.2d 638, 640 (7th Cir.1991); *Carvajal–Munoz v. INS*, 743 F.2d 562 (7th Cir.1984). Section 208 of the Immigration and Nationality Act, 8 U.S.C. § 1158, provides for discretionary grants of asylum to persons who qualify as refugees under section 101(a)(42)(A) "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion." Although the Supreme Court has declined to define "well-founded fear," this court has consistently held that in order to demonstrate a well-founded fear, a petitioner must present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution. *Balazoski*, 932 F.2d at 641; *Carvajal–Munoz*, 743 F.2d at 573. Zulbeari's uncorroborated testimony is insufficient if it does not meet this standard.

■ There is substantial evidence to support the BIA's finding that Zulbeari's activities were not such that a reasonable person would fear persecution. He is not a member of a political organization, he has not participated in any demonstrations and he did not own any Albanian books while in Yugoslavia. The police interrogations to which he was subjected focused primarily on the activities of his friends and ceased

---

**1.** Zulbeari's brief mentions that his father was jailed for six months in 1946 for anti-government activities while he was a member of Bali Komptar. Because Zulbeari had not even been born at that time, and his father has had no further run-ins with the authorities in the following 45 years, this fact is of little, if any, weight in determining whether Zulbeari has a well-founded fear of persecution. *See Campos-Guardado v. INS*, 809 F.2d 285 (5th Cir.), *cert.*

*denied,* 484 U.S. 826, 108 S.Ct. 92, 98 L.Ed.2d 53 (1987) (petitioner did not demonstrate well-founded fear of persecution, even though she had witnessed the brutal murder of her cousin and uncle for their political opinions, had then been raped and subsequently warned by her assailant not to identify him; the political opinions of her relatives could not be imputed to her).

after they were arrested. Although the police visited his home after he left the country, he had obtained a passport extension by bribing an official, a circumstance that may have prompted the visit. There is no indication that the police interrogated his wife about his political activities and from his testimony the visit appeared to have been brief. There is also no evidence that his family has been disturbed since that initial visit in 1986, a fact that is relevant in determining whether there is a well-founded fear of persecution. *See Cuadras v. INS*, 910 F.2d 567, 571 (9th Cir.1990).

Zulbeari presented no specific facts demonstrating a reasonable fear of being singled out for persecution. In fact, it appears from the evidence that the authorities were interested in gathering information about his friends and have shown little, if any, interest in him since the time his friends were arrested. Zulbeari's general complaints about the treatment of Albanians in Yugoslavia,[2] while of interest, do not constitute specific events which would result in singling him out for persecution. Instead, they are complaints about discrimination which would presumably be shared by many or all ethnic Albanians.

The facts here are even less compelling than in *Balazoski*, a recent decision of this court affirming a BIA decision to deny asylum to an ethnic Albanian citizen of Yugoslavia. Balazoski was actually involved in a secret organization championing the rights of Albanians, had participated in a demonstration in support of Albanian independence and had his picture taken with four demonstrators who were later arrested. His niece and nephew had been shot at a demonstration a few years earlier, and the authorities had subsequently interrogated Balazoski as to his beliefs.

Balazoski testified that his wife and son were detained for a number of days after he left, and he presented affidavits from a relative and friends living in the United States stating that on visits to Yugoslavia they had been questioned about him by the authorities. Nonetheless, we held that there was substantial evidence to support the BIA's conclusion that Balazoski's fear of persecution was not objectively reasonable.

Like Balazoski, Zulbeari may fear persecution subjectively, but even more clearly than Balazoski, his political activities were not "of a magnitude or frequency that would cause a reasonable person to fear persecution." *Balazoski*, 932 F.2d at 641.[3] Hence, because it is supported by substantial evidence, we affirm the decision of the BIA denying asylum.

## II. Voluntary Departure

■ Petitioner has also requested that, should we affirm the decision of the BIA, we require the BIA to reinstate the 30 day voluntary departure period granted earlier. This court "lack(s) authority to review the INS's discretionary grant of voluntary departure." *Kaczmarczyk v. INS*, 933 F.2d 588, 598 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 583, 116 L.Ed.2d 608 (1991). That power rests with the district director of the INS. As in the *Kaczmarczyk* case, Zulbeari has not sought an extension of his voluntary departure pending appeal, but this can be remedied by filing a motion with the district director to reinstate voluntary departure. *Kaczmarczyk*, 933 F.2d at 598.

AFFIRMED.

---

**2.** Zulbeari has asked this court to take judicial notice of the uprising of Albanians against the Serbians. We decline to do so for several reasons. First, this request was not made to the BIA, and second, although this court has noted that Yugoslavia is "a country long troubled by ethnic tensions that of late have alarmingly increased," *Balazoski*, 932 F.2d at 640, the state of affairs in Yugoslavia is extremely uncertain and not "capable of accurate and ready determination by resort to sources whose accuracy cannot

reasonably be questioned." Fed.R.Evid. 201(b)(2).

**3.** In *Balazoski*, we discussed the difficult task of defining "persecution" and concluded that, although Balazoski might be subject to harassment on his return, harassment did not rise to the level of persecution. *Balazoski*, 932 F.2d at 641–642. It is not clear in Zulbeari's case that he would even be subject to harassment.