42 F.3d 1391
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Donatus Uzoma NWOKEDI, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 94-1755.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 4, 1994.
Decided Dec. 1, 1994.
 
 Before CUMMINGS, PRATT* and MANION, Circuit Judges.
 
 ORDER
 
 1
 The petitioner is a Nigerian citizen who left Nigeria on April 24, 1990, and entered the United States without inspection on January 1, 1994. In proceedings before an immigration judge (IJ), the petitioner conceded deportability for entering the United States without inspection. As relief from deportation, he applied for asylum and withholding of deportation under Secs. 208 and 243(h) of the Immigration and Naturalization Act, 8 U.S.C. Secs. 158, 1253(h).
 
 
 2
 On June 10, 1991, the IJ denied the petitioner's requests for relief and ordered him deported. The Board of Immigration Appeals affirmed this decision on January 26, 1994. Nwokedi seeks to review that decision.
 
 
 3
 The Board's decision denying asylum and withholding of deportation is supported by substantial evidence; we therefore deny the petition to review.
 
 I.
 
 4
 Donatus Uzoma Nwokedi is a Nigerian citizen who left his country in 1990 and entered the United States without inspection on January 1, 1994. He testified that he left Nigeria the day after participating in a failed coup attempt against the government. He participated in the coup as a messenger for a captain in the army, for which he was paid the equivalent of $4,000 U.S. dollars. He left Nigeria and went to a neighboring country; from there he went to several countries before immigration officials ultimately apprehended him in St. Thomas.
 
 
 5
 Nwokedi conceded deportability, but contended that he should be granted asylum because of a well-founded fear of persecution if he was returned to Nigeria. In support of his position, he claims: (1) that his brother, an aide to one of the organizers of the coup, was killed by the police; (2) that after he left Nigeria, his mother was approached by two strangers who "asked for her son" and beat her; and (3) that he fears he will be killed because of his support for the coup and because he has left his homeland without going through the required process for exiting.
 
 
 6
 The IJ found that Nwokedi was not eligible for asylum or withholding of deportation. She held that even though the facts presented by Nwokedi could substantiate a claim of political persecution, they did not in this case, because she did not believe Nwokedi's testimony. She found him to be incredible and that there was insufficient other evidence to support his claims.
 
 
 7
 The Board affirmed the IJ's decision because Nwokedi failed to establish past persecution or a well-founded fear of persecution as required by 8 U.S.C. Sec. 1158(a). The Board held that he failed to establish that the coup had political motives, or that the petitioner would be persecuted on the basis of a political opinion. The Board found that while inconsistent evidence was presented pertaining to the motivations for the coup, personal motives seemed predominant. Even if the coup was politically motivated, Nwokedi did not establish a well-founded fear of persecution, because his evidence did not demonstrate that he was a target for persecution. The Board further gave little weight to the letters presented by the petitioner at his hearing because they "are unsworn declarations of individuals unavailable for cross-examination". Also, the source of the information was not presented and the letters were written months after the coup attempt. Finally, the letter by the petitioner's spouse was discredited because it was written in English which is not Nwokedi's native language and it would be difficult to determine the letter's point of origination.
 
 II.
 
 8
 The Attorney General has discretion to grant asylum to "refugees". 8 U.S.C. Sec. 1158(a). A refugee is defined by statute as one who is unable or unwilling to return to his or her country "because of [past] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. Sec. 1101(a)(42).
 
 
 9
 " 'Persecution is not defined in the Act, but we have described it as punishment' or "the infliction of harm' for political, religious, or other reasons that are offensive. [Citing Osaghae v. INS, 942 F.2d 1160, 1163 (7th Cir.1991); Balazoski v. INS, 932 F.2d 638, 642 (7th Cir.1991) (definition of persecution includes at minimum conduct that threatens "life or freedom"); Zalega v. INS, 916 F.2d 1257 F.2d 1257, 1260 (7rth Cir.1990) (same)."
 
 
 10
 Sivaainkaran v. INS, 972 F.2d 161, 163 (7th Cir.1992).
 
 
 11
 To prove his well-founded fear of persecution, an alien must not only show that his fear is genuine, but that it is a reasonable fear. Sivaankaran v. INS, 972 F.2d 161, 164 n. 2 (7th Cir.1992). "Although the Supreme Court has declined to define 'well founded fear,' this court has consistently held that in order to demonstrate a well-founded fear, a petitioner must present specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution." Zulbeari v. INS, 963 F.2d 999, 1000 (7th Cir.1992) (citing Bazasoski, 932 F.2d at 641; Carvajal-Munoz v. INS, 743 F.2d 562, 573 (7th Cir.1984).
 
 
 12
 Ultimately, an applicant bears the burden of proving both that he or she is statutorily eligible for asylum by virtue of being a "refugee" within the meaning of 8 U.S.C. Sec. 1101(a)(42), and that the attorney general should proceed to exercise her discretion to grant asylum. Sivaainkaran at id.
 
 
 13
 We review the Board's determination that an alien is ineligible for asylum under the "substantial evidence" test. Under this "highly deferential standard of review," we will uphold the Board's determination "if it is 'supported by reasonable, substantial, and probative evidence on the record as a whole,' 8 U.S.C. Sec. 1105(a)(4), and may reverse only if the evidence is so 'compelling that no reasonable factfinder could fail to find the requisite fear of persecution." Sivaainkaran, 972 F.2d at 163 (quoting INS v. Elias-Zacarias, --- U.S. ----, 112 S.Ct. 812, 817 (1992). Thus, a reviewing court is not entitled to reverse "simply because it is convinced that it would have decided the case differently." Klawitter v. INS, 970 F.2d 149, 151-52 (6th Cir.1992) (citation omitted). Rather, the Board's decision can be reversed "only if the evidence presented by [the petitioner] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 112 S.Ct. at 815 (emphasis added) (citing N.L.R.B. v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 (1939)).
 
 
 14
 Here, the IJ and the Board appropriately found that Nwokedi did not present "specific, detailed facts" that demonstrate actual persecution or give rise to an inference of persecution on one of the specified grounds. Carvajal-Munoz, 743 F.2d at 577 (emphasis in original). First, Nwokedi's evidence failed to establish that his conduct was a result of genuine political convictions. To the contrary, there was evidence that Nwokedi received $4,000 for his involvement in the coup attempt. Second, as the Board noted Nwokedi's evidence fails to establish that the coup plotters were uniformly motivated by political or religious opinion rather than "individuals who sought to overthrow the government for nonpolitical, personal reasons". Petitioner concedes that information in the record logically leads to inferences that other underlying causes of the coup existed. Third, Nwokedi did not explicitly state his political opinion so that the court could determine his motivation and the impetus behind his actions.
 
 
 15
 In addition, the Board correctly gave little value to the documentary evidence presented at the hearing before the immigration judge. The letters referring to his mother's beating by two soldiers suggests that the authorities were looking for Nwokedi. However, it is not clear from the letters: (1) that his mother was interrogated about his whereabouts or his political activity; (2) that the inquiry related specifically to Nwokedi; (3) that the beating or threats were directed at him; and finally (4) that his mother's beating was not intended for his mother, who as a business woman may have been subject to some underlying business motive for the assault. In addition, other letters originally presented at the hearing were made by people who could not be cross-examined, and therefore had limited evidentiary value.
 
 
 16
 Because the Board gave little weight to Nwokedi's documentary evidence, his own testimony before the IJ became critical. However, the Board properly showed deference to the IJ's findings that Nwokedi was incredible because of his demeanor and inconsistencies in his testimony. Garcia v. INS, 31 F.3d 441, 444 (7th Cir.1994) ("Because the immigration judge is in the best position to evaluate the alien's testimony, his or her credibility determinations are to be given much weight) (quoting Palacios-Torres v. INS, 995 F.2d 96, 100 (7th Cir.1993)). At the hearing, Nwokedi could not give a definitive chronology of the countries he visited before arriving in the United States. He claimed that his hotel in Rio de Janiero was not on the beach, while admitting it was on the Copacabana, which is on the beach. Moreover, the Board found that the circumstances under which Nwokedi claimed to have met the prime minister of Antigua were unlikely and that his testimony concerning his departure from Nigeria conflicted with his documentary evidence. In short, there was a sound basis for the finding that Nwokedi was incredible.
 
 
 17
 The decision of the Board denying asylum and withholding of deportation is supported by substantial evidence. We therefore deny the petition.
 
 
 
 *
 The Honorable George C. Pratt, United States Circuit Judge for the Second Circuit, is sitting by designation