**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**May 29, 2003**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

02-60526
Summary Calendar

QAZI SHAHRYAR HAFIZ,

Petitioner,

VERSUS

JOHN ASHCROFT, U S ATTORNEY GENERAL,

Respondent.

02-60527
Summary Calendar

GULNAHAR SHAHRYAR,

Petitioner,

VERSUS

JOHN ASHCROFT, U S ATTORNEY GENERAL,

Respondent.

02-60528
Summary Calendar

QAZI MOHAMED SHAHANSHAH SHAHRYAR,

Petitioner,

VERSUS

JOHN ASHCROFT, U S ATTORNEY GENERAL,

                                        Respondent.


                        _____

                              02-60529
                           Summary Calendar
                        _____


              QAZI MOHAMMAD SHAHZADA SHAHRYAR,

                                           Petitioner,

                              VERSUS

              JOHN ASHCROFT, U S ATTORNEY GENERAL,

                                        Respondent.
        _____

            Appeals from the United States District Court
               For the Board of Immigration Appeals
                           A93-247-601
        _____


Before DAVIS, DUHÉ, and DeMOSS, Circuit Judges.

PER CURIAM:[1]

     In these four cases we are asked to review whether 1) the

Board of Immigration Appeals erred in finding the Petitioner Hafiz

ineligible for asylum; and 2) whether all the Petitioners'

_____

     [1]Pursuant to 5ᵀᴴ CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

                                 2

constitutional rights were violated in the timing of the filing of these proceedings. There being substantial evidence to support the Board's findings and no reviewable issue concerning the timing of these proceedings, we affirm.

## I.

Petitioners, natives and citizens of Bangladesh, remained in the United States beyond the expiration date of their nonimmigrant visas. In removal proceedings before an Immigration Judge, Petitioners conceded removability and Petitioner Hafiz sought political asylum, withholding of removal, or, at the very least, voluntary departure. The consolidated cases are those of Hafiz's wife and two sons.[2] The Immigration Judge denied the applications for asylum and withholding of removal but found Petitioners eligible for voluntary departure. Petitioners appeal denial of the request for asylum (not withholding of removal) and the procedural due process issue (discussed in Part IV).

Petitioner Hafiz's request for asylum was based on his alleged fear for his life if he returned to Bangladesh. Although the Immigration Judge found Hafiz to be credible, he held that the facts shown did not entitle him to asylum. The Board of Immigration Appeals affirmed the Immigration Judge's decision without opinion, making the Immigration Judge's determination the

---

[2] If the primary applicant is granted asylum, his wife and children may also be granted asylum. 8 U.S.C. § 1158(b)(3)(2000).

final agency decision to be reviewed by this Court.  Mikhael v. INS, 115 F.3d 299, 302 (5th Cir. 1977).

## II.

We review factual findings of the Board of Immigration Appeals to determine whether they are supported by substantial evidence. INS v. Elias-Zacarias, 502 U.S. 478, 481, 112 S. Ct. 812, 815, 117 L.Ed.2d 38 (1992).  We review conclusions of law de novo. Carbajal-Gonzalez v. INS, 78 F.3d 194, 197 (5th Cir. 1996).  Once an alien demonstrates eligibility for asylum, the decision to grant asylum is within the discretion of the Attorney General.  8 U.S.C. § 1158(b)(i); Guevara-Flores v. INS, 786 F.2d 1242, 1250 (5th Cir. 1986), cert. denied, 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 757 (1987); Castillo-Rodriquez v. INS, 929 F.2d 181, 184 (5th Cir. 1991).

## III.

The Attorney General may confer asylum upon any "refugee," who is someone "unwilling to return to . . . [a] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A).  The "well-founded fear" standard has both a subjective and an objective component, i.e., that the applicant actually fears persecution, and that such fear is objectively reasonable.  Lopez-Gomez v. Ashcroft, 263 F.3d 442, 445 (5th Cir. 2001).

The objective element of well-founded fear is satisfied if "a

4

reasonable person in [Hafiz's] circumstances would fear persecution if she were to be returned to her native country." Guevara-Flores, 786 F.2d at 1249. Hafiz's fear is based on his membership in two groups, the group of "returnees" whom he believes have been or will be targeted by the Awami League, and the group of former officers involved in the arrest or prosecution of Awami gang members who committed crimes. R. 96.

The Immigration Judge found that Petitioner received a threat in 1980 from members of the Awami League. The Immigration Judge found that Hafiz did not suffer past persecution, however, noting that Hafiz had not been arrested, detained, or harmed in any way, and that from 1982 to 1989, Hafiz was not threatened or harmed while residing in Bangladesh. R. 91, 95.

Turning to the question of future persecution, the Immigration Judge found no evidence[3] of targeting of former military members who were involved in the prosecution of Awami League members accused of crimes. The court noted that Hafiz did testify

___

[3] The Immigration Judge properly noted that evidence could be presented through *either* testimony *or* documentation. Contrary to Hafiz's contention, the Immigration Judge did not require that corroborative documents be produced. R. at 94 ("[H]is testimony may be sufficient if it is believable, consistent, and sufficiently detailed."); 96 (Evidence "may be presented . . . through documentation or through the respondent's testimony."); 97–98 ("If he cannot meet [his burden] by documentation he must be able to give the Court specific examples of individuals and that would have to be detailed with names, places, and times.").
The court's remark that no documentation showed that an individual such as Hafiz was being targeted, in context, constituted part of the court's conclusion that neither testimony nor documentation met this part of Petitioner's burden.

5

generally that the group of former officers involved were being targeted. But upon questioning, the Petitioner provided no specifics (such as names, places, or times), and referred the court only to a document that did not substantiate the statement. R. 96-98. The court held that, without evidence of past persecution, Hafiz would have to show examples of individuals in his group (former military members involved in the prosecution of Awami League members accused of crimes) who had been targeted by the Awami League. R. 96-98. The court therefore concluded that it lacked evidence that individuals situated similarly to Hafiz have been or will be targeted in the future. R. 98.

The court correctly exacted specifics as part of the burden of proof:

> At a minimum [to show persecution], there must be some particularized connection between the feared persecution and the alien's race, religion, nationality or other listed characteristic. Demonstrating such a connection requires the alien to present "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution."

Faddoul v. INS, 37 F.3d 185, 188 (5th Cir. 1994) (quoting Zulbeari v. INS, 963 F.2d 999, 1000 (7th Cir.1992); see also Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir. 1993) (requiring presentation of specific facts demonstrating either past persecution or a well-founded fear of future persecution).

Concerning Hafiz's fear of return to Bangladesh, the Immigration Judge noted that Hafiz had remained in Bangladesh for many years after receiving the 1980 threat. The fact that Hafiz

6

waited seven years after coming to the United States before seeking political asylum lead the court to believe that Hafiz was not serious about claiming asylum.

Hafiz also complains that the Immigration Judge's decision is based on an incorrect burden of proof because the court required him to show a "clear probability" rather than a "reasonable probability" of persecution. This contention misapprehends the opinion. The court correctly distinguished the burden for asylum ("well founded fear") from the burden for withholding of removability ("clear probability" and "more likely than not"). R. 94, 98. See Faddoul 37 F.3d at 188 (explaining that the "clear probability" of persecution necessary for withholding of removal represents "a higher objective likelihood of persecution than the 'well-founded fear' standard").

Under the substantial evidence standard, we will not reverse the Immigration Judge's decision, because we do not find that the evidence compels a contrary conclusion. Elias-Zacharias, 502 U.S. at 481 n.1, 483-84; Carbajal v. Gonzalez, 78 F.3d at 197.

IV.

Petitioners next contend that their due process and equal protection rights were violated because they were precluded from pursuing applications for suspension of deportation. They complain that the INS's delay in filing the proceedings against them until after the effective date of IIRIRA (the Illegal Immigration Reform and Immigrant Responsibility Act) meant that, because of the change

7

in the law, they were placed in removal rather than deportation proceedings. Since they were not placed in deportation proceedings (as they would have been under the former law), Petitioners are ineligible to file for suspension of deportation.

Hafiz had presented himself to the INS before the effective date of IIRIRA, requesting the INS to place him in proceedings to determine his status. Proceedings commence, however, when the INS files a charging document with the immigration court. DeLeon-Holguin v. Ashcroft, 253 F.3d 811, 815 (5th Cir. 2001). That determinative event in the Petitioners' cases occurred after the change in the law.

The INS's decision when to commence proceedings is a matter committed to its discretion, and thus not subject to judicial review. 8 U.S.C. § 1252(g) ("no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien"); see Reno v. American-Arab Anti-Discrimination Committee, 525 U.S. 471, 487, 119 S.Ct. 936, 945, 192 L.Ed.2d 940 (1999)("Respondents' challenge to the Attorney General's decision to 'commence proceedings' against them falls squarely within § 1252(g) . . . ."); Jimenez-Angeles v. Ashcroft, 291 F.3d at 594, 599 (9th Cir. 2002)(reading § 1252(g) as removing jurisdiction over claim that the INS was immediately obligated to initiate deportation proceedings against alien once she presented herself to

8

the INS); see also Heckler v. Chaney, 470 U.S. 821, 831, 833, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985) (agency decisions to enforce through civil or criminal process unsuitable for judicial review).

V.

Substantial evidence supports the Immigration Judge's denial of Petitioners' request for asylum.  No other issue presented is subject to judicial review.  Accordingly, the decision of the Board is

AFFIRMED.